And that is number 18-73167. So, Ms. Ianni, are you preparing for, and Mr. Ramnitz, you're on the phone? Yes, I am on the phone. This is Mr. Ramnitz. Okay, excellent. We are ready to begin whenever counsel are prepared. Good morning, your honors, and may it please the court. My name is Victoria Ianni, and I, along with Nicholas Hunt, our student co-counsel representing petitioner, Mr. Roberto Alexis Lepe Moran. We're here on behalf of the Hastings Appellate Project, supervised by Gary Watt and Leah Firo. I hope to reserve three minutes of my time for rebuttal. California Vehicle Code Section 2800.4 requires nothing more than fleeing a pursuing officer, and while doing so, driving on the wrong side of the road, however briefly. This does not need to be into oncoming traffic, nor does the road need to have a dividing line. The BIA, nonetheless, held that Section 2800.4 is based on the theory that it presents a substantial danger to others, but that danger is only theoretical, and there's not an actual risk present in every case. Would you entertain a question? Yes, your honor. Is it your theory that you actually have to have the danger occur to be relevant at all? That is, there has to be some child crossing the street and be hit by this car before the statute comes into play? No, your honor. In fact, the language of the statute doesn't require that either. It only requires fleeing a pursuing officer, and while doing so, driving on the wrong side of the road. The language of the statute doesn't require any actual injury or any actual risk of injury. Yes, but if you're on the wrong side of the road, an accident can happen, and I suppose we don't want him to run on the wrong side of the road because a very serious accident could occur. I understand your argument, but I'm having a little difficulty understanding why this isn't serious enough that it should come within the bounds of the case. And perhaps you could tell me that. It doesn't matter. It could have run over a child, and still it wouldn't matter, right? Your honor, that is correct, and it's important to note that there is the potential for this crime to involve the facts that your honor presents. However, it's not the case that in every instance where an offender is convicted under the statute that those facts have presented themselves. That plays into the hands of the government's worst case scenario argument, and it fails to utilize the categorical approach set forth by the U.S. Supreme Court in Moncrief v. Holder. That approach requires the court to look at the least of the acts criminalized under the statute, or in other words, the court looks to the most innocuous conduct that could still support a conviction under the statute. The plain language of Section 2800.4 does not require any actual risk of injury or actual risk of injury to give rise to a conviction, and California cases illustrate this point. The California case Pupil v. Scarborough shows this test. In Scarborough, the defendant there was convicted under Section 2800.4 for evading the police while quickly reversing down the center of a two-way dirt road. The road did not have a dividing line, and the entire flight from the police lasted about two minutes, but the wrong way driving in that flight was for only about 200 feet, lasting a brief portion of that two minutes. Excuse me. It seems to me that the cases from California really run counter to your argument, because none of them seemed to be the sort of innocuous, oops, I made a wrong turn for half a block, and I have to quickly fix that. First of all, these are all people who are, by definition, evading the police at this time, which already brings it into somewhat heightened danger, but in Canela, the person drove for some distance into oncoming traffic. In Scarborough, the person drove the wrong way in reverse at a high rate of speed shortly after elementary school let out, and I couldn't find a single case that involved the sort of innocuous, real-world scenario that you're positing. Your Honor, by innocuous conduct, we're referring to the fact that a conviction is still supported under this statute, regardless of whether or not there was any property damage or any pedestrians injured in the course of committing the offense. And in regard to your Honor's question about, or rather, your Honor's comment about impeding the enforcement of the law and fleeing from the police, it's important to look at what this Court has previously held in LaCue v. New Casey, that when an individual impedes the enforcement of the law, that is not a crime in moral perpetuity, when that's the only benefit the individual obtains. No, but in other situations where there is an added element of danger, such as the speeding in my case, that's actually the Seventh Circuit that held that, but when there's an added element beyond fleeing the police that makes it considerably more dangerous, that does become a crime involving moral turpitude, and I really have difficulty coming to the conclusion that driving the wrong way doesn't materially add to the danger of harm. Your Honor, to first address your reference to the Seventh Circuit case, May v. Ashcroft, it's our position that May v. Ashcroft is not informative here, primarily because May v. Ashcroft was decided before the U.S. Supreme Court's decision in Moncrieff v. Holder, which requires a court to look at the least of the acts criminalized under the statute. The Seventh Circuit in that case looked at specific facts of that conviction to assess the aggravated factors, and did not look to the least of the acts criminalized under the statute in that case. I have a question. Do I understand that the police policies in California require that the officers terminate pursuits when violators are intentionally driving in the wrong direction? To my knowledge, Your Honor, that was stated within one of the bill sponsor's comments in the bill analysis for Section 2800.4, but I don't know with any certainty that that is in fact a policy of California Police Department. But if that in fact was part of the rationale behind the statute, doesn't that in itself indicate there's inherent dangerousness of the evasive tactic? No, Your Honor, and in fact, that would run counter to this court's holding in Ramirez-Contreras v. Sessions, which held that a neighboring statute criminalizing felonious flight, Section 2800.2, was not a CIMT. That statute requires that there be flight from a pursuing officer in a willful or wanton disregard for the safety of persons or property. If fleeing from the police were the only factor to give rise to a CIMT determination, then that would render the rationale of Ramirez-Contreras v. Sessions invalid. And to return to Judge Graber's question about aggravating factors, it is important to note that this is not the type of aggravating factor or additional element, rather, that this court has held to be a CIMT. In Cerrone v. Holder, this court noted on page 784 of that opinion that the BIA has made clear that the presence of an aggravating factor is not always dispositive. It depends, Counsel. Doesn't it depend on the nature of the factor? And under Duenas-Alvarez, we have to look at the real world. And I was unable to locate, and perhaps you did, but I was unable to locate any California case in which there's a prosecution for a minimal, non-dangerous thing like going half a block on a city street slowly by accident while evading the police. But nonetheless, I saw nothing like that. Are you aware of any such case? Yes, Your Honor. The California case People v. Scarborough does illustrate that. Well, see, I have a different reading of Scarborough, so is there anything other than Scarborough that you want to... In Scarborough, the defendant was going in reverse at a high rate of speed near an elementary school. Now, that doesn't sound minimal to me, but you may have a different interpretation. Are there any other cases that you can cite? No, Your Honor. Neither we nor the government have been able to locate any other cases involving this statute aside from People v. Scarborough and People v. Canela. But we do have a different interpretation of People v. Scarborough because it would indicate in that opinion that no one was hurt and no property was damaged. Yet still, it gave rise to a Section 2800.4 conviction for that defendant and for the other conduct... Because there's a high probability of injuring someone. There doesn't have to be an actual injury if the risk of serious injury is high. It doesn't have to result in actual injury to be an aggravating factor, does it? That may be true, Your Honor, but the fact of the matter is that potential risk for any injury that may arise is not contemplated in the language of the statute. There is not an element that requires there be any injury or an actual risk of injury. So let me give you an example. Suppose this statute instead said that while you're fleeing the police, if you shoot a firearm out the window, it's a separate crime and it's an aggravating factor. Would you have to demonstrate that people actually get shot or would it be sufficient that there's a heightened risk of serious injury to make that into a CIMT? Neither of those are sufficient, Your Honor, because what is sufficient is that there be an element in the statute requiring that there is a risk... That was my hypothetical exactly, that the person is shooting a firearm out the window of the fleeing car. And you think that's insufficient to be a CIMT also because it doesn't say, and by the way, we are saying this because there's a risk of injury? That's correct, Your Honor. And there are numerous cases that the government has actually cited that illustrate this point. Most of the statutes, all of the statutes that this court has deemed to be CIMTs contain that language. For instance, in Leal v. Holder, the felony endangerment statute at issue there says that a person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury. The language at the end of that statute is the type of actualized risk language that is lacking from Section 2800.4. If the court has no further questions, I'd like to reserve the remainder of my time for rebuttal. I have a question. I have a question. Go ahead, please. What about this Seventh Circuit case of Maeve v. Ashcroft? We always try not to develop a conflict with the other circuits. We have a statement. We don't have conflicts with other circuits unless they're absolutely required, whatever that means. If you were in the Seventh Circuit, how would you get around their case with this particular fact situation we have here? Your Honor, in order to get around the Maeve v. Ashcroft case, the Seventh Circuit would approach a similar statute in the way that looks at whether there is an element that specifically requires a jury to find and a prosecutor to prove that there is an actual element of risk. Let me ask it another way. Suppose we decide to follow the Seventh Circuit, how would this case come out? Your Honor, this court would be deviating from the decisions it has issued on CIMT case law time and time again. That was not my question. That was not my question. Please answer my question. If we decide to follow the Seventh Circuit case, how would this case come out? This case would deny Mr. Moran's petition for review. So what you're asking us to do is follow this place and have this conflict with the Seventh Circuit. Is it important for us in these issues, immigration issues which are nationwide, to have some consistency among the circuits? And if so, how would you argue that we shouldn't follow the Seventh Circuit now? It is important to have consistency, Your Honor. And the surefire way to maintain that consistency is to apply the U.S. Supreme Court's Moncrief v. Holder decision that requires that courts look to the least of the acts criminalized under the statute. And a categorical approach does not look to specific facts. May v. Ashcroft did not follow Moncrief, but this court would be consistent with its prior decisions and with the U.S. Supreme Court if it decides to decide against the May v. Ashcroft decision in the Seventh Circuit. Thank you. Thank you. We will hear from the government. Mr. Ramnitz, are you there? Excuse me. I had started talking and realized I still had my audio muted. Let me start over, please. May it please the Court, Your Honors. Tim Ramnitz on behalf of the United States Attorney General. This immigration case, Petitioner, challenges whether vehicular flight from a pursuing police vehicle while driving against traffic categorically constitutes a crime involving moral turpitude. As this court's case law and other courts' case law makes clear, this is an especially dangerous form of vehicular flight from police and categorically describes reprehensible conduct that easily places it within the category of crime involving moral turpitude. As this court stated in Navarro-Lopez, the most helpful starting point for finding a crime involving moral turpitude is typically comparing it to other cases and similar crimes that have been found to involve moral turpitude. In this regard, the parties appear to agree that the starting point for comparison is Ramirez-Contreras, the 2017 decision of this court looking at a separate California vehicular flight statute. Now what appears to be the general rule in Ramirez-Contreras is that vehicular flight from police is a dangerous act that would seem to involve moral turpitude in most instances. This is why the panel of sites with approval is in some 7th and 6th circuits, maybe Ashcroft and Cayo Orizabal and Luis Lopez, and these are vehicular flights from police where they constituted crimes involving moral turpitude because they were dangerous. They put people at risk. Now what they returned to was an exception to the rule essentially where they were dealing with a particular vehicular flight statute which the court described as unusual in that it was able to punish non-dangerous vehicular flight and in fact non-driving conduct. And the unusual aspect was this string of three traffic violations that didn't even involve driving conduct. These are all registration violations. Otherwise, the general rule appears to be that vehicular flight from police is a crime involving moral turpitude. That being the case, this statute, driving against traffic, easily fits within these cases cited by Ramirez-Contreras as involving reprehensible conduct. This is also why the government cited Sykes, the Supreme Court case, which was in a different posture, but for the Supreme Court's reasoning that there is inherent danger to vehicular flight from police even without aggravating factors such as driving against traffic. So it goes to reason that when there is the added aggravating element of driving against traffic, that always involves a substantial risk to human life which is reprehensible and therefore it is a crime involving moral turpitude. Judge Gilman, did Mr. Moran's going the wrong way cause any property damage or any damage at all? Well, in fact, Mr. Moran was convicted at the same time as this offense of hit and run with injury to another person. So we don't know exactly what happened because we don't look beyond the criminal record, but we do know that at the same time he was convicted of driving against traffic, the same course of conduct, he was also convicted of injury to another person. And this is, in fact, very typical with these vehicular flight from police statutes, unfortunately. Even the statute that was issued in Amirrez-Contreras, California case law, shows it has been charged along with second degree murder because even when you're driving against traffic for a brief moment, you can turn the corner, swerve into the other lane, and kill somebody. This is Judge Wallace. The problem I have with your argument is going against Moncrief against Holder. The Supreme Court there instructed that courts, quote, must presume the conviction rested upon nothing more than the least of the acts criminalized, close quote. So it doesn't matter whether you run over a dog or hit a child. According to this case, apparently, what we do is decide whether or not the least dangerous, that is, they just happened to go over across the line for 15 feet and came back driving at 25 miles an hour with no traffic on the road, that that's the least dangerous. Now it seems strange to me that we have to resurrect and decide a case not based upon the facts of this case, but based upon what we speculate is the least dangerous. But that's what the case seems to hold. I'd like to have your position on why we don't have to follow the same approach in the case here. The government's position is you would follow the same approach, looking just at the elements of this case, and the parties don't dispute what the elements are. The first element being the mens rea, the intent to drive against traffic, and the intent to flee police in a vehicle. And then that's the elements of the case. So what we're saying, what the government's arguing, is that there's an inherent risk to this conduct that's always present in every violation of the statute. So even in the hypothetical, the panel just presented, where it's a brief swerving into the other lane, I could point the court to a case where a brief swerving into the other lane just happened to have someone in that lane for that brief 15 seconds they went across the line and they hit somebody. That's the risk. Counsel, I take it from your answer that it's significant that this aggravating factor of driving the wrong way cannot be accidental. It requires willfulness, as I read the statute. So a sort of innocent, you know, stung by a bee and swerved for a second wouldn't count, even if you're fleeing police. So it has to be willful. Is that part of your argument as well? That is. You have to have intentional driving against traffic, coupled with intentional vehicular flight from police. And when you get to the legislative history, which both parties have cited in this case, the reason why the statute wasn't active is because the legislature viewed this particular form of vehicular flight as, quote, horrific because of the risks involved in this type of flight from police. And that also goes to Judge Gilman's question to Petitioner. It was also a policy of police at the time, at least. I'm not sure if it still is. They would have to break off the pursuit because of the dangers involved. So there's so many, so much, such a level of risk involved in this statute or this particular type of driving conduct. That's why they created this other statute for this specific form of aggravated flight from police. Well, I understand your argument, and I don't mind the argument because it makes a lot of logic and a lot of sense. But how would you, how do you interpret specifically that the conviction rested upon nothing more than the least of the acts criminalized? Because the least act criminalized is, and I think Judge Graber is right, it would be a willful, but it would be a willful moving over into the line. Is that what your argument would be? That if nothing more happened than that for 15 or 20 yards and came back, that there would still be a violation? Yes, that's correct. But the least act would also include the risk involved in this conduct, the inherent risk involved. Is there a case we can rely on, or what is your best case that we would rely on such risks? When you say least dangerous, which court would you rely on? Is that the Seventh Circuit case? No, in fact, I would rely on Ramirez-Contreras of this court when it starts this discussion with V. Alley Holder, where you can have a risk of harm, if the conduct presents a substantial risk of harm to human life, then that is reprehensible conduct. You don't have to have an actual injury or an intent to injure, but if the statute categorically prescribes a type of conduct that always presents a substantial risk to human life, then that is reprehensible conduct. As the California legislature described, it's like firing a gun down a crowded street. You are taking that risk with this inherently dangerous conduct. So every violation of the statute always presents a risk to human life, whether it's for a brief moment where you're swerving into the other lane, it always assumes a risk that something will be there, something could come around the corner, it could be over a hill, under a hill, you never know, everything's happening. Very quickly, no one is anticipating these types of actions, and that's why, again, the California enacted the statute because of the horrific risk involved. That's why the Supreme Court described this particular form of driving against traffic as inherently dangerous. So every violation of the statute would include that level of danger, and as Judge Graber discussed in Petitioner's argument, the best case Petitioner can point to is Scarborough for this realistic probability argument under Duenas-Alvarez. Even Scarborough shows particularly dangerous acts, because they were, school had let out only 20 minutes before, and the Petitioner was driving, and the driving conduct occurred three blocks away, and the court emphasized the danger that was involved, even in that violation of the statute. So by its element, by the realistic probability approach, this crime is, categorically, prescribes reprehensible conduct. With intentional mens rea of driving against traffic, and intentional vehicular flight from police, and therefore categorically constitutes a crime involving moral turpitude. Does the panel have any further questions? I do not. I think we do not. Thank you. And Ms. Ianni, you have a very small amount of rebuttal time remaining. Your Honor, may I have a few minutes for rebuttal? You may have a minute for rebuttal. Thank you. Your Honor, theoretical risk is not enough. It is an actual risk that is required, which is found in the elements of the statute. In this court's decision in Leal v. Holder, on 1148 page of the opinion, this court stated that the fact remains that a jury must unanimously find a trial, or the defendant must admit to a plea that the conduct created a substantial actual risk of imminent death to another person. The categorical approach looks to the elements. And these elements are not contained in Section 2800.4 that show that there's any required actual risk of injury. This is distinct from all of the cases the government cites. Leal v. Holder, Alciar v. Barr, Hugo v. Barr, and the third circuit jury v. attorney general all contain this required language. Accordingly, this court should grant Mr. Moran's position for review and hold that Section 2800.4 is not a CIMT and remand his case to the CIA with instructions to terminate the proceedings and restore his lawful status. Thank you. Thank you, counsel. We appreciate the arguments of both of you. And again, we appreciate that you're representing the petitioner, Pro Bono. That's very helpful to the court. And with that, the case is submitted. Thank you. And we are adjourned. All rise. This court for this session stands adjourned.
judges: Wallace, Gilman, Graber